**HOWARD LAW, PC**
VINCENT D. HOWARD (SBN 232478)
vhoward@howardlawpc.com
GREGORY H. D. ALUMIT (SBN 257124)
galumit@howardlawpc.com
675 Anton Boulevard, First Floor
Costa Mesa, CA 92626
Tel.:  (800) 872-5925
Fax:  (888) 533-7310

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY GARCIA AND RENEE GARCIA, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>     vs.<br><br>WELLS FARGO BANK, N.A.; CAL-WESTERN RECONVEYANCE LLC; and DOES 1-10, inclusive,<br><br>            Defendants. | CASE NO.:  8:14-cv-01086-AG-JPR<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT WELLS FARGO BANK, N.A.'S MOTION TO DISMISS COMPLAINT**<br><br>*Honorable Andrew J. Guilford*<br><br>Date:     September 22, 2014<br>Time:    10:00 a.m.<br>Courtroom:  10D |

## I. INTRODUCTION

This action is brought against Wells Fargo Bank, N. A. ("Wells Fargo") and Cal-Western Reconveyance LLC ("Cal-Western"), (collectively referred to as "Defendants"), for violations of California's Homeowner Bill of Rights ("HBOR") and Unfair Competition Law, Business & Professions Code §§ 17200, et seq (the "UCL") "unlawful," and "fraudulent" prongs.

The persistent wrong the HBOR sought to curb was the practice of dual tracking, which occurs when servicers process a homeowners' foreclosure and loan modification applications at the same time. Henry Garcia and Renee Garcia (the "Garcias") allege that Defendants violated the HBOR's ban on dual-tracking. (Complaint ("C"), ¶¶ 49-53).

Wells Fargo does not dispute the Garcias' factual allegations of dual-tracking; but rather, argues that the Garcias' loan modification application was not "complete", and thus, it was permitted to dual track. However, the Garcias have expressly alleged that they submitted a "complete" loan modification application. (C ¶ 34).Accordingly, this factual dispute is not subject to resolution on a motion to dismiss. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

Because the Garcias have alleged proper HBOR violations, their UCL "unlawful" prong claim is therefore properly alleged. Furthermore, the Garcias' express allegations of Wells Fargo's "unfair" conduct fulfill the three tests currently employed by the Courts. *See Yanting Zhang v. Superior Court,* 57 Cal.4th 364, 380 fn9 (2013) (recognizing the three tests for "unfairness" under the UCL and employing the *State Farm* balancing test in a consumer case).

Finally, to the extent that the Court finds any of the Garcias' allegations lacking, the Garcias respectfully request leave to amend.

## II. STATEMENT OF FACTS AND CASE HISTORY

On April 15, 2013, the Garcias submitted a complete loan modification application to Wells Fargo as required by Cal. Civ. Code § 2923.6(h). (C ¶ 34). On

May 8, 2013, Wells Fargo's Home Preservation Specialist, Melanie Dinkins, sent a letter to the Garcias acknowledging receipt of the Garcias' request for loan modification assistance. (C ¶ 35).

On September 24, 2013, Wells Fargo recorded a Notice of Trustee's Sale on the Garcias' property. (C ¶ 40).

On March 5, 2014, the Garcias filed a Class Action Complaint against Wells Fargo. (Case No. 8:14-cv-00558-AG-JPR ("Garcia I")). On June 23, 2014 the parties stipulated to dismiss *without prejudice* Garcia I. Wells Fargo contends that Garcia I was dismissed because a "conclusion had been reached that plaintiffs did not have viable claims." (Mot. at 3:1). This is simply not true. Plaintiffs dismissed Garcia I since Plaintiffs' counsel determined that the Garcias, at this time, were not suitable representatives of a class. The Garcias' matter is better suited for an individual action so the Garcias dismissed without prejudice their Class Action Complaint and filed this individual lawsuit on June 25, 2014.

## III. ARGUMENT

### A. Operative Legal Standard

On a motion under Rule 12(b)(6), dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim. *Bell Atl. Corp. v. Twombly* ("*Twombly*"), 550 U.S. 544, 555-556 (2007). All material allegations are accepted as true and construed in the light most favorable to the plaintiffs. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). A complaint must only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a). Although the allegations must be more than speculative, the Federal Rules:

> [do] not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded

///

complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely. *Twombly*, 550 U.S. at 556.

*Twombly* did not change Rule 8's notice pleading standard. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" [quoting *Twombly*, 550 U.S. at 555]).

"A complaint should not be dismissed unless it appears beyond doubt the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Clegg*, 18 F.3d 752 at 754; *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009). The issue is not whether the non-moving party will ultimately prevail but whether plaintiffs are entitled to offer evidence to support the claims asserted. See *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1100 (9th Cir. 2010).

"Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend 'shall be freely given when justice so requires,' bearing in mind 'the underlying purpose of Rule 15 ... [is] to facilitate decision on the merits, rather than on the pleadings or technicalities.'" *Perkins v. LinkedIn Corporation*, 2014 WL 2751053 at *7 (N.D. Cal. June 12, 2014), citing *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir.2000).

**B. The Complaint Sufficiently Alleges that Defendants Engaged in Dual-Tracking in Violation of HBOR**

Cal. Civ. Code§ 2923.6(c) states:

If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer…shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer [ ]shall not

  record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs:

   (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.

   (2) The borrower does not accept an offered first lien loan modification within 14 days of the offer.

   (3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.

On April 15, 2013, the Garcias submitted a complete application for a first lien loan modification to Wells Fargo as required by section 2923.6(h). (C ¶ 34). On September 24, 2013, even though the Garcias' application was still pending, Defendants recorded a Notice of Trustee Sale. (C ¶ 40). Accordingly, the Garcias have adequately alleged violations of Section 2923.6(c) because Defendants recorded a Notice of Trustee Sale while the Garcias' application was pending.

Nevertheless, Wells Fargo contends that § 2923.6 does not apply to the Garcias' application because it was not "complete". (Mot. At 5:4-6:18). For purposes of the HBOR "an application shall be deemed 'complete' when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer." Cal. Civ. Code § 2923.6(h). Furthermore, Wells Fargo claims that it has complied with the National Mortgage Settlement ("NMS"), and thus, has no liability under the HBOR. (Mot. at 6:20-27). Section IV. F. 2. of the NMS Settlement Term Sheet states, "Servicer shall notify borrower of any known deficiency in borrower's initial submission of information, no later than 5 business days after receipt, including any missing information or documentation required for the loan modification to be considered complete." Here, Wells Fargo failed to provide the Garcias the required notification

of incompleteness within 5 business days after submission of their application, thus the Garcias' April 15, 2013 should be deemed complete. To deem otherwise would reward Wells Fargo for not following the terms of its own NMS. After all, it is Wells Fargo who foists the requirements of the NMS upon the Garcias.

Finally, Wells Fargo relies on *Rockridge Trust v. Wells Fargo N.A.*, 2014 WL 688124 (N.D. Cal. Feb. 19, 2104) to support its contention that the Garcias' application was not complete. However, this case favors the Garcias. In *Rockridge Trust*, the servicer did comply with its own NMS terms by notifying the borrower no later than 5 business days of missing documents. *Rockridge Trust*, 985 F. Supp. 2d 1110, 1152-53 (N.D. Cal. 2013).Here, the Garcias did not receive any incompleteness notification from Wells Fargo as required by the NMS. *Rockridge Trust* is therefore distinguishable because the Garcias could not have failed to timely provide documents to Wells Fargo to complete their application because Wells Fargo failed to comply with the NMS notice of incompleteness requirement described above. Therefore, the Garcias have presented serious questions of fact whether theirapplication was complete. Thus, the Garcias have sufficiently alleged that Wells Fargo violated the HBOR.

### C. The Complaint Sufficiently Alleges That Defendants Violated the UCL

#### 1. Overview of the UCL

"[T]he primary purpose of the unfair competition law . . . is to protect the public from unscrupulous business practices." *Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy*, 4 Cal.App.4th 963, 975 (1992); *see also In re Tobacco II*, 46 Cal.4th 298, 312. The UCL defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." (Bus. & Prof. Code, § 17200).By proscribing "any unlawful" business act or practice (ibid.), the UCL "borrows" rules set out in other laws and makes

///

violations of those rules independently actionable. *Cel–Tech.*, supra, 20 Cal.4th at p. 180, 83 Cal.Rptr.2d 548, 973 P.2d 527.

### 2. The Garcias Have Standing to Bring UCL Claims

Here, while the Garcias' loan modification application was pending, Wells Fargo recorded a Notice of Trustee Sale and continues to seek a sale of their home. Nevertheless, Wells Fargo argues that the Garcias have not suffered an "economic injury . . . *caused by*, the unfair business practice." (Mot. at 7:8-21).

To satisfy these requirements at the pleading stage, a plaintiff must allege facts showing that he or she suffered an economic injury caused by the alleged violation. *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 322, 326 (2011). A plaintiff asserting a UCL claim "satisfies its burden of demonstrating standing by alleging an economic injury." *Boschma v. Home Loan Center, Inc.*, 198 Cal.App.4th 230, 254 (2011). Here, the Garcias have alleged that as a result of its UCL violations, Wells Fargo received and continues to hold from the Garcias monies including but not limited to increased monthly servicing fees due to capitalized arrears to unpaid principal balances, illegal delinquent late fees, other foreclosure fees like force-placed insurance, property inspections, property maintenance fees, appraisals, title searches, and legal services which were all inflated fees because these activities were in-sourced to other affiliated entities. (C ¶ 65). These alleged losses adequately state an economic injury sufficient to demonstrate standing under the UCL.

The Garcias have also sufficiently alleged that their "economic injury was the result of, i.e., caused by, the unfair business practice ... that is the gravamen of the claim." *Kwikset*, 51 Cal.4th at 337; *see also Lueras v. BAC Home Loans Servicing, LP*, 221 Cal.App.4th 49, 83 (2013) (finding servicer's alleged misrepresentations about a pending loan modification and failure to work with borrower in good faith would be sufficient to show that the resulting foreclosure was "caused by" the servicer for purposes of UCL standing). Additionally, courts have found that allegations regarding the imposition of unlawful fees are sufficient to satisfy both the

"injury" and "caused by" standing requirements under the UCL. *See Caceres v. Bank of Am., N.A.*, SACV 13-542-JLS RNBX, 2013 WL 7098635 (C.D. Cal. Oct. 28, 2013) (finding that allegation of improperly imposed finance charges was enough to satisfy UCL standing requirements).

Here, the Garcias' express allegations of Wells Fargo's dual-tracking which caused the illegal recordation of the Notice of Trustee Sale and the illegal collection of late fees in violation of the HBOR establishes UCL standing.

### 3. The Garcias Sufficiently Allege UCL "Unlawful" Prong Claim

An unlawful business practice under the UCL is "anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180 (1999) (*Cel-Tech*).

An act violates the UCL "if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003). The UCL incorporates other laws and treats violations of them as unlawful practices that are independently actionable under the UCL, such that a violation of any law may serve as a basis of a UCL claim. *Plascencia v. Lending 1st Mortgage* ("*Plascencia III*"), 259 F.R.D. 437, 448 (N.D. Cal. 2009). Thus, Wells Fargo's dual tracking in violation of HBOR while the Garcias' loan modification application was pending serves as the basis for the Garcias' UCL "unlawful" prong claim.

### 4. Plaintiffs Sufficiently Allege An UCL's "Unfair" Prong Claim

The unfair prong is "intentionally broad, thus allowing courts maximum discretion to prohibit new schemes to defraud." *Schnall v. Hertz Corp.*, 78 Cal.App.4th 1144, 1166 (2000). However, California courts have failed to reach any consensus as to a single test to apply to determine what conduct constitutes a violation of the unfair prong of the UCL. *See, e.g.*, *Yanting Zhang v. Superior Court*, 57 Cal.4th 364, 380 fn9 (2013) (recognizing that the standard for "unfair" under the

UCL is unsettled and describing the tests)[1]. As a result, there are three different tests that have been used to determine whether any given conduct is unfair. They are: the *Cel-Tech* "tethering" test, the *State Farm* "balancing" test and the *Camacho* Federal Trade Commission (or FTC) test. However, Courts have regularly ruled that if a plaintiff can satisfy any one of the tests, the plaintiff has adequately pled a claim of unfair business practices. *See Ellsworth v. U.S. Bank, N.A.*, 908 F.Supp.2d 1063, 1090; *Leghorn v. Wells Fargo Bank, N.A.*, 950 F.Supp.2d 1093, 1121 (N.D. Cal. 2013); *O'Connor v. Uber Technologies, Inc.*, No. 13-cv-3826, 2013 WL 6354534, at *16-17 (N.D. Cal. Dec. 5, 2013) (Chen, J.).

In *Cel-Tech* the California Supreme Court found that the "tethering" test was applicable to competitor cases (*Cel-Tech*, 20 Cal.4th 163, 187) and disapproved of the "tethering" test for consumer cases. *Yanting Zhang* 57 Cal.4th at 381. Therefore, the most appropriate test for analyzing the Garcias' UCL unfair claims is the *State Farm* "balancing" test that the California Supreme Court approved and applied to consumer claims in the *Yanting Zhang* case. *Id.* at 176.

///

///

---

[1] "The standard for determining what business acts or practices are "unfair" in consumer actions under the UCL is currently unsettled. (See *Aleksick v. 7–Eleven, Inc.* (2012) 205 Cal.App.4th 1176, 1192, 140 Cal.Rptr.3d 796 [public policy that is predicate for action must be tethered to specific constitutional, statutory or regulatory provisions]; *Ticconi v. Blue Shield of California Life & Health Ins. Co.* (2008) 160 Cal.App.4th 528, 539, 72 Cal.Rptr.3d 888 [applying balancing test, but also examining whether practice offends established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers]; *Camacho v. Automobile Club of Southern California* (2006) 142 Cal.App.4th 1394, 1403, 48 Cal.Rptr.3d 770 [consumer injury must be substantial, and neither outweighed by countervailing benefits nor avoidable by consumers]; *Progressive West Ins. Co. v. Superior Court* (2005) 135 Cal.App.4th 263, 285, 37 Cal.Rptr.3d 434 [impact of the act or practice on victim is balanced against reasons, justifications and motives of the alleged wrongdoer].) The parties here do not address this question, nor do we." *Yanting Zhang v. Superior Court,* 57 Cal.4th 364, 380 fn9 (2013).

In consumer cases, under the *State Farm* balancing test, a business practice is "unfair" when the business practice "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and the gravity of the harm to the alleged victim outweighs the utility of the defendant's conduct. *See, e.g., Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal.App.4th 700, 718-19 (2001); *Bardinv. Daimlerchrysler Corp.*, 136 Cal.App.4th 1255, 1260 (2006); *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal.App.4th 247, 256 (2010).

The Garcias' allegations clearly satisfy this balancing test. As alleged, Wells Fargo's conduct injured consumers, including the Garcias, resulting in the illegal collection of late fees, inflated foreclosure fees, loss of home equity when those illegal fees were amortized to the principal balance of the mortgage loan, bad credit, and insurmountable debt. There can be no doubt that the Garcias' injuries at the hands of Wells Fargo were substantial. Nor can it be reasonably argued that the injuries are outweighed by the utility of the defendant's conduct, given that Wells Fargo's deceptive practices were only motivated by profit and offer no legitimate benefit to consumers or competition. (C, ¶¶ 13-32 (describing practice of dual tracking and charging of illegal late fees, as well as inflated foreclosure fees).

Wells Fargo also argues that the Garcias cannot state a claim because their injuries could have been avoided if they had made their mortgage payments on time. This same argument was addressed in *Ware v. Bayview Loan Servicing, LLC*, 13-CV-1310 JLS NLS, 2013 WL 6247236 (S.D. Cal. Oct. 29, 2013) where the court found:

> While Plaintiffs might have avoided this harm by avoiding defaulting on their mortgage in the first place, **once they were in default they had no control over Defendants' actions, and thus they could not have prevented the harm**. If true, Plaintiffs allegations demonstrate unethical, oppressive, and injurious conduct that could very well constitute unfair business practices under the UCL.

*Id.* at *8 (emphasis added).

Accordingly, the Garcias have adequately stated a UCL claim under the unfairness prong.

## IV. CONCLUSION

Based the foregoing, Mr. and Mrs. Garcia respectfully request that the Court deny Wells Fargo's motion to dismiss in its entirety.  In the alternative, if the Court grants the motion in whole or in part, Mr. and Mrs. Garcia respectfully request that the Court grant them leave to amend.

Dated:  September 2, 2014          **HOWARD LAW, PC**

By: /s/ Gregory H. D. Alumit
Vincent D. Howard
Gregory H. D. Alumit
675 Anton Boulevard, First Floor
Costa Mesa, CA 92626

*Attorneys for Plaintiffs*